(No. 35608.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY WYSOCKI, Plaintiff in Error.

*Opinion filed September 29, 1960.*

Henry A. Kalcheim, and Howard M. Brandstein, both of Chicago, for plaintiff in error.

Grenville Beardsley, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, and Jim D. Keehner, Assistant Attorneys General, and Francis X. Riley, and James J. Glasser, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

The defendant, Harry Wysocki, jointly with Frederick Thomas and Albert Donel, was indicted in the criminal court of Cook County for larceny of an automobile belonging to Dorothy Perkins and for the crime of receiving the same vehicle knowing it had been stolen. He was granted a severance and, after waiving a jury, was found guilty of the latter charge by the court and sentenced to the penitentiary for a term of one to five years. This writ of error has followed, the sole issue presented for review being

whether it was proved beyond a reasonable doubt that defendant, the operator of a public garage, had knowledge that the vehicle was stolen at the time he received it.

Events leading to the charges against defendant show that during the evening hours of October 27, 1958, Chicago police received a call that some one was tampering with an automobile in the back yard of defendant's pl' ,ce of residence. Two squad cars responded and an officer in the first car to arrive found two young men removing the rear end from a 1955 Chevrolet. In response to inquiries the two men said the owner of the car had sent them over and that the latter operated a garage at 101st and Halsted streets. Inspection of the car showed that the ignition had been broken and tampered with, whereupon the officers reported the license and learned that the vehicle had been stolen. Upon receipt of this information the second squad car, in which officer Kenneth Knuckles was present, left for defendant's garage. The latter, however, was already en route to his residence where he had been summoned by his brother. Upon arriving, he advised the police that nothing was wrong, that it was a customer's car, that he didn't know the customer's name, and that the car had been left with him for some work to be done. Defendant was then informed the car was stolen, and he was placed under arrest.

Officer Knuckles did not appear as a witness but it was stipulated that if he was called he would testify that when he went to defendant's garage he found a 1958 charcoal gray Chevrolet Corvette, the subject matter of the indictment against defendant, as well as several other cars, and that Fred Thomas and Albert Donel were then engaged in stripping such automobile. Additionally, it was stipulated that the Corvette was subsequently identified by its owner, Dorothy Perkins, as the same vehicle, valued at $4,800, which had been stolen from a Chicago street during the early morning hours of October 26, 1958, while locked and without an ignition key.

So far as the record shows, defendant and Donel first had association in August, 1958, when Donel brought a 1957 Chevrolet to defendant's garage for so-called "customization" alterations of the radiator and grill for which he paid $15 and still owed $10. Donel admitted that the 1957 Chevrolet was also a stolen vehicle but there is no suggestion in the record that defendant knew, or should have known, that such was the case. Subsequently the two men saw each other at drag races in which Donel was racing the 1957 Chevrolet, but the extent and substance of their further relations are in conflict.

To sustain its burden of proving defendant's knowledge that the 1958 Corvette was stolen, the People called Donel, who had pleaded guilty to the indictment, as a witness. According to his version, he met with defendant on October 19, 1958, at which time it was agreed that, for the sum of $125, Donel would steal and deliver to defendant a 1955 Chevrolet which the latter needed for the repair of an automobile that had been wrecked. About a week later Donel stole such a car and delivered it, and on this occasion told defendant he was going to steal a 1958 Corvette and proposed that if defendant would transfer the Corvette motor to the witness's 1957 Chevrolet, then defendant could retain the Corvette body and its accessories. According to the witness, defendant agreed to this arrangement.

Further testifying Donel related that he and persons other than defendant stole the Perkins vehicle at about 2:00 A.M. on the morning of October 26, 1958, a Sunday, and brought it to defendant's garage at about 9:00 o'clock the same morning. Defendant was not there so the witness parked the car at the rear of the garage, left a note on the steering wheel instructing defendant to call him, and went home where defendant telephoned later in the day. The witness related he went to the garage the next evening and found that the body of the Corvette had been completely removed from the frame. In an ensuing discussion

defendant said the body would have to be removed from the garage and asked Donel and Thomas, who was also present, to obtain a trailer for that purpose. Before this could be done, however, the police apprehended Donel and Thomas at the garage.

On cross-examination, and when examined by the court, Donel reiterated he had no keys for the Corvette, and that he parked it at the rear of the garage without keys. He conceded that he had never left the 1957 Chevrolet at the garage for the switch of motors, but explained he had not done so because the garage was too crowded at the time.

Further, he admitted a conversation with defendant's attorney prior to trial where he stated defendant did not assist in stealing the car, and where he had promised to write a letter absolving defendant.

Testifying in his own behalf, defendant denied having any illegal arrangement with Donel or knowledge of the latter's thefts. He related Donel had brought the 1955 Chevrolet to the garage about October 21, 1958, to have the transmission repaired but was then told the garage was full and that the car would have to be parked in the back yard until defendant had time to work on it. Defendant stated that he had received no keys for the 1955 Chevrolet, that the car was at all times parked in an open place with license plates attached, that he had never gotten into the car or done any work on it, and that he had never authorized any one to strip parts from it.

Concerning the 1958 Corvette, defendant related he first knew anything about it when he found it parked at the rear of his garage, without keys, but with a note containing Donel's telephone number. Upon calling Donel, he was instructed to remove the body from the Corvette and was asked to replace it with a 1957 body which Donel would furnish, all of which he agreed to do for the sum of $300. Defendant denied there was any talk concerning the switching of motors and stated that the Corvette license plates

were either on the car or on a work bench in his shop at all times. On the following evening, after defendant had removed the body as directed, Donel appeared at the garage with a trailer stating he was going to haul the Corvette body away, but the police arrived before Donel had done so. In other portions of his testimony defendant conceded that he had been given no keys for the Corvette and that he had pushed the car into the garage in order to work on it. He denied having any tinfoil about his premises, a material commonly used to "jump" ignition switches, in direct contradiction to police testimony that a roll of such material was found in the garage. Concluding his testimony, defendant stated that he had been arrested for truancy as a boy and sent to reform school; that he was later sentenced to the penitentiary for a term of two years on another charge involving an automobile and that in a conversation with Donel prior to trial the latter stated he would have absolved defendant from any connection with the crime, but his lawyer wouldn't let him.

The only other witness for the defendant was Robert Palermo who was present in August, 1958, when Donel brought the 1957 Chevrolet to defendant's garage for customization, and who verified defendant's knowledge that Donel was in fact using the modified car for drag racing.

To sustain a conviction for receiving stolen property it must appear beyond all reasonable doubt that the accused knew the property was stolen at the time he received it. (*People* v. *Holtzman,* 1 Ill.2d 562; *People* v. *Klapperich,* 370 Ill. 588; *People* v. *Rubin,* 361 Ill. 311.) Proof of guilty knowledge, however, is not confined to proof of actual or direct knowledge of the accused, but may be established by proof of circumstances which, by their very nature, would induce a belief in a reasonable mind that the property was stolen. (*People* v. *Mowry,* 6 Ill.2d 132; *People* v. *Piszczek,* 404 Ill. 465.) In the instant case, if the testimony of Donel is accepted as true, there is proof

that defendant had actual knowledge of the theft of the Corvette even before it occurred. It is true defendant himself denied guilty knowledge, actual or otherwise, but the conflict thus raised goes only to a determination of the credibility of the witnesses, a function long committed to the trial court, or jury, which hears and sees the witnesses and is better equipped to evaluate their demeanor, sincerity, and the weight to be afforded their testimony than is a court of review. On review the judgment of the court or jury in such respect will not be disturbed unless it is plainly apparent that an injustice has been committed and that the accused was not proved guilty of the charge in the indictment beyond a reasonable doubt. (*People* v. *Pride,* 16 Ill.2d 82; *People* v. *McArthur,* 359 Ill. 121.) Such a case is not disclosed by this record and, in our opinion, the court did not err in giving credence to Donel's testimony.

Apart from Donel's testimony concerning defendant's actual knowledge that the Corvette was stolen, there are inconsistencies in defendant's position which may logically be said to point to guilty knowledge, and circumstances which should have induced belief in the mind of a reasonable person that the vehicle was stolen. Donel, who for over a two-month period had not paid a $10 balance due for repairs on the 1957 Chevrolet, brought to defendant's garage within the period of a week, first a 1955 Chevrolet, and then a 1958 Chevrolet valued at $4800. Both cars were delivered without keys, the Corvette being left at the garage in an unusual manner on a Sunday morning, and the condition of the ignition on the 1955 model was such that even the most cursory examination revealed it had been tampered with. When the attention of the police was first drawn to the 1955 car, defendant professed not to know the owner's name, yet by his own testimony he had spent the day working on the 1958 car also brought in by Donel. Upon the same occasion, the two young men apprehended by the police while removing parts from the

1955 car said they had been sent by the owner, whom they identified as defendant and, when the latter reached the scene, he represented that the young men were there with his permission. At the trial, and after it was established the 1955 vehicle was stolen, defendant altered his position and denied that he had ever given authority for the 1955 car to be stripped. Taken in its entirety, we are satisfied that the proof was sufficient to establish defendant's guilty knowledge beyond reasonable doubt.

In a further attack upon the sufficiency of the proof, defendant urges that the testimony of Donel is entitled to little weight because it was that of a confessed accomplice given in the hope of reward in the form of lighter punishment for himself. While we have frequently stated that the uncorroborated testimony of an accomplice is attended by infirmities which require the utmost caution, it has always been the rule in this jurisdiction that such testimony is sufficient to convict if it satisfies a court or jury, as the case may be, beyond a reasonable doubt. (*People* v. *Baker*, 16 Ill.2d 364; *People* v. *Nitti*, 8 Ill.2d 136; *People* v. *Hermens*, 5 Ill.2d 277.) Here, although defendant did not inject the issue into the trial by cross-examination of Donel as to his motives for testifying, a reading of the record discloses that the experienced court which heard the cause was fully aware of the influences under which the testimony of the witness was given and, it must be presumed, was not unmindful of its infirmities in arriving at his judgment. (Cf. *People* v. *Leslie*, 18 Ill.2d 420.) Moreover, it is our opinion that much of the evidence already commented upon as supporting proof of defendant's guilty knowledge serves to corroborate the testimony of Donel in material respects.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*