UNITED STATES of America ex rel.
Robert HUDSON,
Petitioner-Appellant,

v.

Joseph CANNON, Warden,
Respondent-Appellee.

No. 75–1243.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1975.

Decided Feb. 4, 1976.

George L. Lincoln, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Thomas Connors, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before STEVENS, Circuit Justice *, FAIRCHILD, Chief Judge, and HASTINGS, Senior Circuit Judge.

FAIRCHILD, Chief Judge.

This appeal from the dismissal of a habeas corpus petition for failure to state a claim on which relief could be granted raises issues left unanswered in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). We are required to determine whether the failure to give the warnings required by

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), during an interrogation conducted after the decision in *Miranda*, requires the exclusion from evidence at trial of third party testimony acquired as the result of defendant's statements during such interrogation. Petitioner alleges violations of his rights in other respects, and a similar question arises as to exclusion on their account.

■ The petitioner-appellant, Robert Hudson, is presently serving a 199 year sentence in the Illinois State Penitentiary after having been convicted in state court of the murder of a shopkeeper.[1] He alleged that during interrogation he implicated an accomplice, McFadden, who implicated a second accomplice, Smith, and that both accomplices testified for the prosecution at the trial at which petitioner was convicted. (An earlier trial at which they did not testify did not produce a verdict.) He also makes the following allegations concerning his interrogation: On the morning of May 22, 1967, he was arrested, taken to the scene of the crime, and from there to a police station where he was questioned briefly. He was then taken to a second police station where he was questioned by several policemen from approximately 1:00 P.M. until 6:30 P.M. when he implicated McFadden. He was not warned of his rights to remain silent at either interrogation and his requests to phone an attorney were denied. During the afternoon session the petitioner went without food, drink, rest and cigarettes and was told that he could make a telephone call after he "told them (the police) what' they wanted to hear."

These allegations fall outside the fact situation presented in *Tucker* where the Court held that, absent any suggestion of involuntariness, the failure to warn the accused of his right to appointed

* Mr. Justice John Paul Stevens participated initially as Circuit Judge, and on and after December 19, 1975 as Circuit Justice.

1. His conviction was upheld in *People v. Hudson*, 46 Ill.2d 177, 263 N.E.2d 473 (1970). The present claim was not discussed in that opinion. A post-conviction proceeding followed, and the state has made no claim that state remedies were not exhausted.

counsel during an interrogation conducted prior to the *Miranda* decision did not require the exclusion of third party testimonial fruits of the accused's unwarned statement. The facts alleged by petitioner not only constitute a failure to give *Miranda* warnings during an interrogation occurring after the *Miranda* decision, but the denial of his requests to contact an attorney, coupled with the failure to warn him of his right to remain silent, appear to constitute a Sixth Amendment violation under *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). And the length of the interrogation, the lack of refreshment or rest, the denial of access to counsel, the failure to warn petitioner of his rights, and the promise of a phone call as an inducement to talk present elements tending toward a finding of involuntariness under traditional standards. *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

Although recognizing that the *Tucker* holding does not extend to the present facts, the district court read the *Tucker* opinion as implying that the interest in securing trustworthy evidence was sufficiently paramount as to justify the admission of the evidentiary fruits of an involuntary statement. We do not agree.

We can envisage that the balancing (as performed in *Tucker*) of the social interest in trustworthy evidence against the needs for deterrence of improper police conduct might cause the Supreme Court to allow the admission of third party testimonial fruits of interrogation of an accused in custody without *Miranda* warnings in a case where, unlike *Tucker*, the event occurred after the *Miranda* decision. Even with that assumption, it seems to us most improbable that such balancing would permit the prosecution to use similar third party testimonial results of coerced statements, or statements obtained by an *Escobedo* type denial of an accused's Sixth Amendment rights. Surely in *Tucker*, the Court took

pains to point out that the *Tucker* facts lacked coercion sufficient to amount to compulsion of self-incrimination and fell short of an *Escobedo* situation.

We conclude that petitioner's allegations were sufficient to entitle him to a hearing in which to establish either that his statement was made involuntarily or that he was deprived of his Sixth Amendment right to counsel under *Escobedo*, and that the testimony of his accomplices was "tainted fruit" of either of these violations.

*Third Party Testimonial Fruits of Involuntary Statements*

■ *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) is controlling precedent for requiring the exclusion of the tainted fruits of police conduct which abridges constitutional rights. *Tucker*, 417 U.S. at 446, 83 S.Ct. 407. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The use of police coercion to extract an involuntary statement is a violation of due process under the Fourteenth Amendment, *Haynes, supra*; *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), and to the extent that the use of police coercion to extract a statement is regarded as a violation of the right against self-incrimination, made applicable to the states in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), an independent line of Fifth Amendment precedents would also require exclusion. The Fifth Amendment protects "against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of the crime, and of sources of information which may supply other means of convicting the witness or party." *Counselman v. Hitchcock*, 142 U.S. 547, 586, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892).

Nothing in *Tucker* suggests that there need not be exclusion of third party testimony where a state court defendant can show that such testimony is the product of a coerced or involuntary statement. *Tucker* holds that a failure

to give a required *Miranda* warning is not a constitutional violation, and that an unwarned statement may nevertheless be found to be voluntary under traditional standards. Only after establishing that the defendant's unwarned statement *was voluntary* did the Court go on to consider whether, as a matter of first impression, the third party testimonial fruits of the unwarned statement could be admitted.

> "This Court has also said, in *Wong Sun v. United States,* * * *, that the 'fruits' of police conduct which actually infringed a defendant's Fourth Amendment rights must be suppressed. But we have already concluded that the police conduct at issue here did not abridge respondent's constitutional privilege against self-incrimination, but departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege. Thus, . . . there is no controlling precedent of this Court to guide us." *Tucker,* 417 U.S. at 445–46, 94 S.Ct. at 2364.

■ It is true historically that, unlike evidence seized in violation of the Fourth Amendment, exclusion of coerced testimony was partially premised on the unreliability of such testimony. The unreliability of a compelled statement would not usually attach to its fruits. But the distrust of compelled statements has been conjoined with an abhorrence of the methods which produce them, *Spano,* 360 U.S. at 320, 79 S.Ct. 1202, *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), and to the extent that a coerced statement is excluded because of the unlawfulness of the methods through which it was adduced, the same taint attaches to the fruits of the statement. To allow the admissibility of such tainted evidence because of its probative value would be inconsistent with the principle that the reliability of a particular coerced statement cannot serve to justify its admission. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

Thus, petitioner is entitled to an evidentiary hearing at which he may attempt to show that his statements as to McFadden were involuntary.

### The Fruits of Escobedo Violations

■ Since *Wong Sun, supra,* requires the exclusion of the fruits of constitutional violations, the question of the admissibility of the fruits of an *Escobedo* violation depends upon whether *Escobedo* defines a constitutional right or merely "prophylactic standards." In *Tucker,* the Court reasoned that the omission of a *Miranda* warning did not violate the defendant's constitutional rights because the *Miranda* warnings are designed to safeguard the right against self-incrimination. Since the defendant's statement was voluntary, the *right* against self-incrimination was not violated, even though the safeguard was.

The Court has characterized the statements obtained from *Escobedo* as the "product of his compulsion," *Miranda,* 384 U.S. at 465, 86 S.Ct. 1602, which suggests that a statement obtained in violation of *Escobedo* could not be found to be voluntary. But even if one reasons that a statement obtained in violation of *Escobedo* may be voluntary, it would not follow that there was no violation of a constitutional right since *Escobedo* seems to find a violation of a Sixth Amendment right to the assistance of counsel. Although subsequent Court language has tended to assimilate Escobedo to the *Miranda* decision, treating it as primarily designed to effectuate the right against self-incrimination, *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Court in *Miranda* reiterated that the police conduct in *Escobedo* constituted a Sixth Amendment violation "[i]ndependent of any other constitutional proscription." 384 U.S. at 465 n.35, 86 S.Ct. at 1623.

The *Miranda* Court emphasized that the Sixth Amendment violation consisted of the fact that the police prevented Escobedo's retained counsel, who was outside the interrogation room, from consulting with his client. But since *Escobedo* rested on the contention that the

police interrogation was a critical stage in the adversary process, 378 U.S. at 486, 84 S.Ct. 1758, there would be little reason to extend the right to counsel to one who has already been able to consult with an attorney prior to the interrogation while denying it to one who desires, but has not had the benefit of prior consultation.

*Tucker* also characterized the *Miranda* rules as prophylactic safeguards of rights, rather than rights in themselves, because language in *Miranda* implies that the states are free to employ devices other than the *Miranda* warnings to accomplish the same ends.[2]

While *Miranda* was designed to dispel the "inherent pressures" of custodial interrogation by requiring the police to take affirmative action, the police conduct proscribed in *Escobedo* served to "heighten" the pressures on the accused and to make his statements the "product of his compulsion." *Miranda*, 384 U.S. at 465, 86 S.Ct. 1602. Thus, there is no reason why *Escobedo* cannot be deemed implementation of a constitutional right to consult with an attorney, at least in the absence of a warning of the right to remain silent.

Thus, petitioner is entitled to an evidentiary hearing at which he may attempt to show that the police denied his requests to contact an attorney and failed to warn him of his right to remain silent in violation of *Escobedo*.

### The Admissibility of Evidentiary Fruits of a Miranda Violation

■ Since *Tucker* holds that a failure to give an accused a *Miranda* warning does not deprive him of a constitutional right, the precedents which require the exclusion of the fruits of *Fourth* and *Fifth* Amendment violations can be distinguished without breach of logic.[3] *Tucker* calls for balancing the interests served by exclusion against the interest in making probative evidence available to the trier of fact. According to *Tucker*, the exclusion of an unwarned statement serves to deter unlawful police conduct, to protect the courts from reliance on untrustworthy evidence, and to maintain an adversary or accusatorial system of criminal justice. The Court held that these interests would not be significantly fostered by requiring the exclusion of probative third party testimonial fruits of an unwarned statement, at least where the police in question were acting in good faith reliance on the then known constitutional standards governing the conduct of a custodial interrogation. The Court reasoned that since the police officers had shown a concern for protecting the accused's rights according to then known standards, the exclusion of the third party testimony would serve little purpose.

The fact that the interrogation considered in *Tucker* occurred before *Miranda* played no part in the Court's reasoning that untrustworthiness did not require the exclusion of the unwarned statement. That sequence appears only to have possibly worked to reduce the force of the deterrence rationale.

The Court did not address the deterrent effect of exclusion of third party testimony obtained as a result of a statement taken after the *Miranda* decision but without giving the warnings required by it. Mr. Justice White, concurring, stated his own view that any benefit from deterrence is far outweighed by the advantages of relevant and probative testimony. 417 U.S. at 461, 94 S.Ct. 2357.

2. Extension of *Tucker* to an *Escobedo* violation is also open to question because of the conceptual difficulties involved in the concept of nonconstitutional prophylactic safeguards which are enforceable against the states. See *Tucker*, 417 U.S. 462–63, 94 S.Ct. 2357, 41 L.Ed.2d 182 (Douglas, J., *dissenting*); The Supreme Court: 1973 Term, 88 Harv.L.Rev. 41, 197–202 (1974).

3. *Tucker* may call in question a part of our holding in *United States v. Cassell*, 452 F.2d 533 (7th Cir. 1971), that a handwriting exemplar was inadmissible tainted fruit because it was obtained after a statement which was itself inadmissible for failure to give *Miranda* warnings.

For a police officer, with *Miranda* requirements in mind, the principal deterrent to omitting them is the knowledge that the accused's statement will be excluded. Arguably the exclusion of evidence obtained as the result of an unwarned statement adds little.

A majority of the court (other than the author of this opinion) conclude that even where an interrogation occurs after the *Miranda* decision, and warnings required by it are not given, the deterrent effect of excluding third party testimonial fruits of an otherwise voluntary statement is not sufficient to warrant exclusion. The majority would therefore extend *Tucker* to this case to the extent that petitioner's claim rests solely on omission of *Miranda* warnings.

However, were it up to the author of this opinion, we would heed *Tucker's* emphasis on the "good faith" of the police officers involved, and bar the admission of the third party testimonial fruits of a post-*Miranda* failure to warn an accused of his rights.

*Allegations of "Tainted Fruits"*

 The state has argued the *Miranda* point, but has not argued that fruits of a coerced statement or of one obtained through violation of a Sixth Amendment right to counsel need not be excluded. As to any ground, the state argues that the petition is insufficient as a claim of a causal link between petitioner's statement and the testimony of McFadden and Smith.

Petitioner alleged: "the State used evidence which was obtained as a result of the illegal interrogation. . . . Petitioner gave an oral statement implicating Carl McFadden and Harold Riggens. . . . At the second trial, the prosecution used McFadden as a state's witness. Also John Smith, whom McFadden implicated was used as a state's witness. McFadden and Smith should not have been used against your Petitioner. Both were obtained as the result of the illegal interrogation." The state contends that petitioner must plead the absence of intervening causal factors which may have prompted McFadden and Smith to testify voluntarily.

We cannot agree. The allegations were sufficient to apprise the district court of the claim that the testimony of McFadden and Smith was the result of the statement unlawfully obtained from petitioner. They would thus have been sufficient in a civil action. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). We think any requirement of greater factual specificity in habeas petitions should not cast the burden on the petitioner to make factual allegations demonstrating the absence of what the state refers to as intervening causal factors. The opinion of the Supreme Court of Illinois does describe a promise of immunity to McFadden and other facts which could be relevant to attenuating any taint, but although these matters are known to petitioner, the state is presumably in far better position to present these and any other relevant factors and their significance with respect to the chain of causation between petitioner's statement implicating McFadden and the testimony of McFadden and Smith.

It is of course open to the state to show that it learned of the witnesses through an independent source. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Whether it learned independently or not, the state has the opportunity of showing that there was no taint, or circumstances which purge or dissipate it. *Wong Sun*, 371 U.S. at 487–88 and 491, 83 S.Ct. 407. *See also, Smith v. United States*, 117 U.S.App.D.C. 1, 324 F.2d 879 (1963) and *Smith v. United States*, 120 U.S.App.D.C. 160, 344 F.2d 545 (1965). The state has the burden of proof. See *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Seiffert*, 463 F.2d 1089, 1092 (5th Cir. 1972). See *Brown v. Illinois, supra.*

The state has drawn our attention to a passage in *People v. Hudson*, 46 Ill.2d 177, 191, 263 N.E.2d 473, 481 (1970) indicating that the state learned of Smith

through an independent source. It also appears, however, that Smith did not give information to the police until McFadden identified him from a picture as having been involved in preparation for the crime. Thus the question remains as to Smith whether, assuming that McFadden's cooperation was attributable to petitioner's statement, the connection between petitioner's statement and Smith's testimony was so attenuated that any taint was dissipated.

We conclude that the allegations are sufficient to entitle petitioner to an evidentiary hearing.

' The judgment is reversed and the cause remanded for further proceedings.