THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GAIL ALTHIDE, Defendant-Appellant.

Third District No. 78-63

Opinion filed April 30, 1979.

Michael L. Neff, of Hartzell, Glidden, Tucker & Neff, of Carthage, for appellant.

John X. Breslin, Joseph A. Mueller, and Terry A. Mertel, all of State's Attorneys Appellate Service Commission, of Ottawa, for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial in the Circuit Court of Hancock County, defendant was convicted of theft over $150. He was sentenced to probation for one year and ordered to pay restitution of $440 and a fine of $2,000.

The undisputed facts of this case are relatively simple. At about 1 a.m. on April 23, 1976, four men, Bret Clay Wildrick, Brad Rettig, Seldon Conover and Robin Brotherton, stole eight hogs from the farm of Harold Brackensick. Somewhere between 1 a.m. and 2 a.m. on the same night three of the men, Wildrick, Rettig and Conover, sold eight hogs to the defendant, Gail Althide, a self-employed area farmer. Defendant was charged with theft under section 16—1(d)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(d)(1)), which provides:

"§16—1. Theft.

A person commits theft when he knowingly:

* * *

(d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property; * * *."

Two jury trials were held, the first ending with the jury unable to reach a verdict. The sole contested factual issue at both trials was whether defendant knew or should have known the hogs were stolen when he bought them.

Harold Brackensick testified that the eight hogs stolen from his farm weighed between 100 and 165 pounds and were valued at a total of about $480. Defendant, on the other hand, testified the hogs he bought for $180 weighed between 50 and 75 pounds and were of generally poor quality. He said $180 was a reasonable price for the hogs he bought and that he had no idea they were stolen. Prior to defendant's first trial each of the four men who originally stole the hogs pled guilty to theft and was sentenced to one year probation and ordered to pay a $250 fine. All four men testified for the State in the case at bar. Bret Wildrick, to whom defendant's $180 check was made payable, and the only one of the men who actually conversed with defendant on the night in question, testified that defendant did not ask where the men had gotten the hogs, but did ask "if anybody was with us or followed us." Wildrick estimated the hogs weighed between 110 and 125 pounds. Two of the other men, Conover and Brotherton, testified the hogs weighed between 100 and 125 pounds, but Brad Rettig said the hogs were smaller, weighing between 50 and 100 pounds. Defendant presented testimony from two area farmers who said they had sold hogs to defendant in the later evening hours, 9 to 9:30 p.m., and one of the witnesses testified he knew of occasions when the defendant worked as late as 2 a.m. during the busy spring season. The jury returned a guilty verdict, and defendant appeals raising three issues for review.

Defendant contends he was denied his right to a speedy trial. Section 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b)) provides that a defendant who has been released on bail must be tried within 160 days from the date he demands trial. (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b).) Defendant in the case at bar did not make a specific demand for a speedy trial, but he did request a jury trial and he claims that request should be considered sufficient to meet the demand requirements of section 103—5(b).

■■ This argument has been considered and rejected by this and other courts of this State. (*People v. Baskin* (1967), 38 Ill. 2d 141, 230 N.E.2d 208; *People v. O'Connor* (1st Dist. 1978), 66 Ill. App. 3d 786, 384 N.E.2d 149; *People v. Dimond* (3d Dist. 1977), 54 Ill. App. 3d 146, 369 N.E.2d 383; *People v. Wyatt* (1st Dist. 1977), 47 Ill. App. 3d 686, 365 N.E.2d 373.) In order to commence the running of the 160-day period the defendant must make a demand for trial which is clear, unequivocal and apparent from the record of the case. (*People v. Schoo* (2d Dist. 1977), 55 Ill. App. 3d 163, 371 N.E.2d 86.) A defendant's request for a jury trial does not meet these requirements. As our supreme court has stated, "The original request for a jury trial cannot be considered as a demand for immediate trial, but only a demand that when trial was held it would be before a jury." (*Baskin*, 38 Ill. 2d 141, 145.) Defendant notes that this case was set

for trial at a time earlier than that at which it was actually tried, but that fact is of no significance to our determination of this issue. No unequivocal demand for trial was made in this case; therefore, the 160-day period did not begin to run and no violation of defendant's rights under 103—5 could have occurred. *Schoo; O'Connor.*

Defendant contends the evidence was insufficient to prove beyond a reasonable doubt that he possessed the requisite guilty knowledge at the time he purchased the stolen hogs. Guilty knowledge under section (d) of our theft statute may be established by proof that the accused actually knew the property was stolen or "may be inferred from all of the facts and circumstances which would induce belief in the mind of a reasonable person that the property was stolen and which would be sufficient to induce in the mind of the accused a like belief."*People v. Philyaw* (2d Dist. 1975, 34 Ill. App. 3d 616, 339 N.E.2d 461; Ill. Rev. Stat. 1975, ch. 38, par. 16—1(d)(1).

We believe the evidence in the present case is sufficient to sustain the jury's verdict. The State's evidence indicated defendant purchased the hogs in question at an unusually late hour, 2 a.m., without inquiry as to their source of ownership, and at a price of about 38 percent of their estimated value. Similar factors have been specifically noted by courts of review as indicative of the necessary guilty knowledge. (*People v. Stewart* (1960), 20 Ill. 2d 387, 169 N.E.2d 796; *Philyaw.*) Defendant denied knowing the hogs were stolen and he claimed he paid a reasonable price for them. But, the effect of such a denial and claim of innocence is only to raise a question for the jury. In *People v. Wysocki* (1960), 20 Ill. 2d 62, 169 N.E.2d 264, where the defendant similarly claimed the evidence was insufficient to establish his guilty knowledge, our supreme court stated:

> "It is true defendant himself denied guilty knowledge, actual or otherwise, but the conflict thus raised goes only to a determination of the credibility of the witnesses, a function long committed to the trial court, or jury, which hears and sees the witnesses and is better equipped to evaluate their demeanor, sincerity, and the weight to be afforded their testimony than is a court of review. On review the judgment of the court or jury in such respect will not be disturbed unless it is plainly apparent that an injustice has been committed and that the accused was not proved guilty of the charge in the indictment beyond a reasonable doubt. 20 Ill. 2d 62, 68.

We do not think an injustice was committed in the instant case. Bret Wildrick testified that defendant asked if "anybody was with us or followed us." Such a comment tends to prove guilty knowledge. It is true, as defendant suggests, that Wildrick and the other men had reason to be biased against him, for the sheriff had advised them that defendant was

the one who had "ratted" on them. However, this fact was known by the jury and its significance is to be determined by that body. (*People v. Lofton* (1st Dist. 1977), 49 Ill. App. 3d 559, 364 N.E.2d 584.) Once again we must reiterate:

"This court will not substitute its judgment for that of the jury in cases in which the facts could lead to either of two inferences unless the inference accepted by the jury is inherently impossible or unreasonable." (*People v. Jones* (3d Dist. 1978), 67 Ill. App. 3d 477, 479, 384 N.E.2d 523, 525; *People v. Parker* (3d Dist. 1976), 35 Ill. App. 3d 870, 343 N.E.2d 52, 55.)

It was not impossible or unreasonable for the jury to conclude that defendant knew or should have known the hogs were stolen when he bought them.

As his final contention defendant claims the trial court erred in allowing the four original hog thieves to testify at his trial. According to defendant the testimony of these men was "fruit of the poisonous tree," being the product of defendant's improperly induced statements. This issue arose below in a rather unusual manner.

Prior to his first trial defendant moved to suppress certain statements he had made to police during their investigation of the hog theft. A hearing was held and the judge determined that the statements had been improperly induced and should be suppressed. Defense counsel drafted a suppression order and showed it to the State's Attorney for his approval. After deleting one paragraph of the order, the State's Attorney initialed it and defense counsel gave the order to the judge who signed it. The order included the following paragraph:

"It is further ORDERED, ADJUDGED and DECREED that the testimony of all witnesses discovered as a result of the illegally obtained admissions of the Defendant be and same are hereby suppressed."

At his first trial defendant objected to the testimony of the four men, arguing that they had been identified to the police in defendant's improperly induced statements and their testimony was, therefore, subject to suppression under the trial court's order. The judge stated that his order was intended to extend to the testimony of the four men, who were allowed to testify.

Prior to his second trial, which was presided over by a different judge, defendant filed a motion in limine asking the court to enforce the original suppression order, including that portion suppressing testimony derived as a result of defendant's statements. Defense counsel suggested that a determination should be made as to whether the testimony of the four men resulted from defendant's statements or from some other

source. The court declined to make such a determination and the men were allowed to testify at the second trial in which defendant was convicted.

On appeal defendant asks this court to reverse his conviction and suppress the testimony of the four men or at least to remand the cause to the trial court for a determination of whether or not the testimony of the men is the tainted fruit of defendant's improperly induced statements. We agree that the cause must be remanded for such a determination.

The "fruit of the poisonous tree rule" requires suppression of both the direct and the indirect products of unconstitutional police conduct. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.)

> "[T]he 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182, 24 A.L.R. 1426." (*Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 1051, 88 S. Ct. 2008.)

■ It has been held that a witness discovered as a result of an illegal search had to be suppressed (*People v. Albea* (1954), 2 Ill. 2d 317, 118 N.E.2d 277), and that a defendant's trial testimony was improperly admitted where it was found to be the product of an illegally procured confession. (*Harrison.*) However, not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *Nardone v. United States* (1939), 308 U.S. 338, 84 L. Ed. 307, 60 S. Ct. 266.) The question which must be answered in each case is whether the evidence to which objection is made was derived by exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint. (*Wong Sun; Nardone; Brown.*)

> "If an accused establishes the 'primary illegality' and shows a connection between the illegality and what are alleged to be the fruits of the illegality, the prosecution will have the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source." *People v. Wilson* (1975), 60 Ill. 2d 235, 238, 326 N.E.2d 378, 380; *Harrison.*

Both the United States Supreme Court and the Seventh Circuit Court of Appeals have recently considered application of the "poisonous fruit" doctrine to third party testimony allegedly derived from a defendant's improperly secured statements. In *Michigan v. Tucker* (1974), 417 U.S. 433, 41 L. Ed. 2d 182, 94 S. Ct. 2357, a witness in a rape prosecution was identified to police in the defendant's statement which was taken without

the defendant being advised of his right to appointed counsel. The statement was taken prior to the *Miranda* decision, but defendant was tried after that decision was rendered and the court held it applicable. The trial court suppressed defendant's statement, but allowed the witness identified therein to testify at the trial where defendant was convicted. The Supreme Court affirmed, but did so on rather limited grounds.

The court determined that the defendant's statement was in fact voluntarily made and reasoned, therefore, that there was no violation of defendant's constitutional right against self-incrimination, but only a violation of the "prophylactic" rules developed to protect that right. (417 U.S. 433, 439, 41 L. Ed. 2d 182, 190, 94 S. Ct. 2357, 2364.) The court engaged in a balancing test and concluded that under the facts of the case the objectives of deterring improper police conduct and assuring reliable evidence were outweighed by the need of the triers of fact to have all relevant information before them. The defendant's statement was voluntarily made, leaving no reason to believe it was unreliable, and it was made at a time when failure to advise a suspect of his right to free counsel was not improper police conduct. The Supreme Court held that the mere failure to warn an accused of his right to appointed counsel did not require exclusion of third party testimony derived from the defendant's unwarned statement. In so holding, however, the court carefully distinguished the situation where the defendant's statement was the result of actual compulsion.

"Where there has been genuine compulsion of testimony, the right [against self-incrimination] has been given broad scope." 417 U.S. 433, 440, 41 L. Ed. 2d 182, 190, 94 S. Ct. 2357, 2362.

In *United States ex rel. Hudson v. Cannon* (7th Cir. 1976), 529 F.2d 890, a *habeas corpus* petition from an Illinois State prisoner convicted of murder, the Seventh Circuit considered a case where third-party testimony was derived from a defendant's statement which was allegedly taken without proper warnings and with improper threats and promises. The court of appeals distinguished *Tucker* based on the presence of actual compulsion:

"[I]t seems to us most improbable that such balancing [as employed in *Tucker*] would permit the prosecution to use similar third party testimonial results of coerced statements * * * ." (529 F.2d 890, 892.)

The court noted that the problem of reliability associated with the use of compelled statements may not arise with respect to the fruits of such statements, and then said:

"But the distrust of compelled statements has been conjoined with an abhorrence of the methods which produce them, [citations] and to the extent that a coerced statement is excluded because of the

unlawfulness of the methods through which it was adduced, the same taint attaches to the fruits of the statement. To allow the admissibility of such tainted evidence because of its probative value would be inconsistent with the principle that the reliability of a particular coerced statement cannot serve to justify its admission. *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Rogers v. Richmond,* 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961)." (529 F.2d 890, 893.)

The case was remanded to the State trial court for a hearing in which the prosecution would have the burden of proving it learned of the witness from an independent source or that the witness' link to defendant's involuntary statement was so attenuated as to purge it of the illegal taint.

■■ *Hudson* is consistent with the reasoning of the highest court of this State, and we believe it controls our decision in the case at bar. (See *People v. Wilson* (1975), 60 Ill. 2d 235, 326 N.E.2d 378; *People v. Armstrong* (1968), 41 Ill. 2d 390, 243 N.E.2d 825; *People v. Albea* (1954), 2 Ill. 2d 317, 118 N.E.2d 277.) The "primary illegality" in the instant case was established at the suppression hearing when the trial court ruled defendant's statement inadmissible. Unlike the situation in *Tucker,* defendant's statement here was found to be involuntarily made, the result of improper promises of lenience. We deal here not merely with a violation of the "prophylactic rules" designed to protect a defendant's right against self-incrimination, but with a violation of that constitutional right itself. In such a case the objective of deterring improper police conduct requires exclusion of any evidence which was derived as a result of the illegality. (*Hudson.*) Defendant specifically objected to admission of the hog thieves' testimony at both his first trial and in a motion in limine before his second trial on the grounds that it was the product of his involuntary statement. He asked the court to determine if the testimony was derived from the statement or from an independent source. Evidence at the suppression hearing indicated that defendant's statements were at least one means by which the police learned the identity of the hog thieves, and Bret Wildrick testified that the sheriff told him defendant was the person responsible for his arrest. The "primary illegality" and a connection between that illegality and the testimony of the witnesses was established, and the burden was on the State to prove by clear and convincing evidence that the challenged testimony came from an independent source or was in some other way purged of the taint. *Wilson; Harrison; Hudson.*

■■ That burden was not met. The record is insufficient for us to determine whether the witnesses' testimony was "fruit" of the defendant's statements, or whether it was derived from an independent source. This determination should be made in the trial court, where the State, which is

in the best position to present evidence with respect to the chain of causation between the statement and the witnesses' testimony, will have the opportunity to prove that the testimony is untainted. (*Hudson.*) Therefore, we remand this cause to the Circuit Court of Hancock County for a hearing on the admissibility of the testimony to which objection has been raised. Both parties will have an opportunity to present evidence and argument. If the testimony is held inadmissible, the trial court will vacate the judgment and grant defendant a new trial. If the testimony is held admissible, a new judgment will be entered on defendant's conviction.

Reversed and remanded with directions.

STOUDER, P. J., and BARRY, J., concur.