(No. 46497.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. DAVIS L. WILSON, Appellant.

*Opinion filed March 24, 1975.*

Hugh C. Griffin, of Chicago (Lord, Bissell & Brook, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll,

Jr., and Jerome Charles Randolph, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

On October 5, 1970, David L. Wilson, the defendant, and Louis Haggans were indicted in the circuit court of Cook County for the murder of Joseph Ellis. Haggans was dismissed from the indictment on the prosecution's motion, and he subsequently became a witness for the State. The indictment was later dismissed, and a new indictment was returned naming only the defendant and charging murder, burglary and robbery. The defendant moved to suppress a statement he had given the police and to suppress certain physical evidence which he alleged had been illegally seized. The motion was denied, and the challenged evidence was introduced in evidence at the defendant's trial. He was convicted after a jury trial and sentenced to concurrent terms of 50 to 100 years for murder, 10 to 20 years for robbery and 10 to 20 years for burglary. The appellate court reversed and remanded for a new trial on the charges of murder and robbery but affirmed the burglary conviction (16 Ill. App. 3d 473). We granted the defendant's petition for leave to appeal from the affirmance of the conviction for burglary.

On August 25, 1970, the body of Joseph Ellis, a 69-year-old night watchman at the 12th Street Store in Chicago was found in the basement of the store. An autopsy revealed that he had been beaten and kicked to death. The security bars on the window of the store had been pried apart, and two portable television sets, a pair of green pants from the store's stock and the watchman's .38-caliber revolver were missing.

The record shows that the defendant was taken into custody on the evening of August 25, 1970. He was questioned until approximately 8 a.m., released for a couple of hours and taken into custody again. He was

questioned by a series of police officers, and an assistant State's Attorney took a statement from him at 7:30 a.m. on August 28. The defendant testified that he had been threatened and beaten by the police during this prolonged interrogation. The State concedes here that the statement in which the defendant confessed to the crime charged in the indictment should not have been admitted into evidence at the defendant's trial. However, citing *Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174, the State argues that while the confession was improperly admitted, the error was harmless error because there was overwhelming independent evidence establishing the defendant's guilt of murder and robbery as well as of burglary. (Rule 318(a).) The defendant's position is that evidence the State calls independent was in fact tainted by the illegally obtained evidence and therefore cannot be considered when determining whether there is sufficient untainted evidence to support a conviction. Relatedly, he says, too, that though he testified and judicially admitted the commission of burglary, this testimony was induced by the introduction of illegally obtained evidence.

We have several related questions to examine. We must inquire whether there is evidence which can be considered independent and untainted by the concededly illegal confession. (See *Murphy v. Waterfront Commission of New York Harbor* (1964), 378 U.S. 52, 79, 12 L. Ed. 2d 678, 695, 84 S. Ct. 1594; *Wong Sun v. United States* (1963), 371 U.S. 471, 487, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Costello v. United States* (1961), 365 U.S. 265, 280, 5 L. Ed. 2d 551, 81 S. Ct. 534; *Nardone v. United States* (1939), 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266; *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182.) The character of this inquiry was described by the Supreme Court as " *** 'whether granting establishment of the primary illegality, the evidence to which instant objection is [being] made has been come at by exploitation of that illegality or

instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun v. United States* (1963), 371 U.S. 471, 488.

If an accused establishes the "primary illegality" and shows a connection between the illegality and what are alleged to be the fruits of the illegality, the prosecution will have the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source. *Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008; *United States v. Wade* (1967), 388 U.S. 218, 240, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *People v. Martin* (1942), 382 Ill. 192.

In *Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008, there were confessions by the defendant which had been illegally procured and admitted into evidence. Thereafter the defendant testified and made certain admissions. The court said that the prosecution had the burden to show that the testimony was independent evidence and that the wrongful use of the illegally obtained confessions did not induce the defendant's testimony. The court held that the burden had not been met by the prosecution.

We must determine whether the defendant's testimony in which he admitted the burglary of the store was evidence from an independent source or was it tainted evidence. That is, was the defendant's admission brought about by the State's use of the illegally gotten confession.

Finally, we must consider whether the evidence of the defendant's guilt on all or any of the charges was so overwhelming that it can be said that the error of wrongfully admitting the defendant's confession and other illegally obtained evidence was harmless error. *Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174.

At the defendant's trial here, Louis Haggans, who had been indicted with him, testified for the State. He stated

that the defendant had sought to borrow a car in the early morning hours of August 25, 1970, and that he had seen the defendant shortly thereafter with Claude and Cleveland Lee in the rear of the 12th Street Store putting merchandise into the Lees' car. He testified that he did not know who had killed the watchman and said that he had not seen the defendant enter the 12th Street Store.

The defendant had implicated Haggans in the confession which was wrongfully taken from him. However, to show that its knowledge of Haggans was not a fruit of the defendant's confession, the prosecution offered testimony of Officer Anthony Finnelly that he had first heard Haggans's name from Jerry Eaton.

James Barking testified that he had purchased a portable television set, which was identified as one of the two sets missing from the 12th Street Store, from the defendant in the early morning of August 25. He further testified that at the same time he tried to purchase a .38-caliber revolver from the defendant but did not buy the gun because the defendant was asking too much for it. He stated that after the sale the defendant went into his (defendant's) house carrying another television set he had and a box and the handgun.

Claude and Cleveland Lee testified that early on August 25, 1970, they had driven the defendant to a vacant lot at 14th Street in the vicinity of the 12th Street Store. (The 12th Street Store is not literally at 12th Street.) They said the defendant took two portable television sets and a box (which it appears contained a pair of pants taken from the store) and placed them in the trunk of their auto. At the defendant's direction they drove about a mile to the defendant's house. There he took the television sets and the box from the car and paid Cleveland Lee $10 for the ride. He then sold one of the television sets to James Barking, an acquaintance who had been standing in the street near the defendant's house, and entered a house, where he said his family lived. The Lees

testified that the defendant had a small revolver in his possession.

After the presentation of the State's case, which included, of course, the introduction into evidence of the concededly illegal confession, the defendant took the witness stand. In substance he testified that he had entered the 12th Street Store through a window to steal merchandise. He wanted to use the merchandise to pay Jerry Eaton for narcotics he had gotten from Eaton. Upon entering the store, he said, he found the body of the murdered watchman. He testified that he took a revolver from the watchman's body and also took two television sets from the store.

The defendant says there clearly is no evidence, apart from the wrongfully obtained confession, to support his conviction of murder or robbery and that the appellate court correctly reversed these convictions. He admits that his testimony amounted to a judicial admission of burglary, but he argues that the admission cannot be considered in determining whether there is sufficient evidence untainted by the illegally gotten confession to sustain his burglary conviction. His argument is principally based on *Harrison v. United States* (1968), 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008, where three illegally obtained confessions of murder taken from the defendant had been introduced at his trial. The defendant took the stand and described how the crime had occurred. In testifying he did not acknowledge guilt, but his testimony did place him at the scene of the crime. On appeal his conviction was reversed because of the illegally obtained confessions. When he was retried he was again convicted after the testimony which he had given at the first trial was admitted in evidence against him. The Supreme Court reversed, saying that the defendant's testimony at the first trial had to be considered as induced, and therefore a poisonous fruit of the three illegally obtained confessions. The court observed:

"*** the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a timeworn metaphor. For the 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.' [Citations.] *** The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." *Harrison v. United States* (1968), 392 U.S. 219, 222-223, 20 L. Ed. 2d 1047, 1051-2.

The appellate court here sought to distinguish this defendant's case from *Harrison* and concluded that the defendant was not induced to testify by the admission of the illegally obtained confession. It is a conclusion with which we cannot agree. We judge that the State did not meet its burden of proving that the wrongful conduct of its agents did not induce the defendant to testify. The State had introduced his wrongfully obtained written confession and evidence of his oral statements to police officers. In addition, certain physical evidence, a pair of pants and a portable television set taken from the store and a pair of blood-stained gym shoes, had been wrongfully admitted into evidence. (Its admission was error because the police learned of this evidence from their illegal interrogation of the defendant.) It would not be unreasonable to conclude that the defendant was impelled to take the stand and in a tactic of desperation admit the

burglary, the lesser offense, in an attempt to avoid being convicted of murder.

That the prosecution has the burden of proving that its use of wrongfully obtained evidence did not cause the accused to testify is clear from *Harrison.* The court said:

> "Having 'released the spring' by using the petitioner's unlawfully obtained confessions against him the Government must show that its illegal action did not induce his testimony.
>
> No such showing has been made here. In his opening statement to the jury, defense counsel announced that the petitioner would not testify in his own behalf. Only after his confessions had been admitted in evidence did he take the stand. It thus appears that but for the use of his confessions, the petitioner might not have testified at all. But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired. On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already spread the petitioner's confessions before the jury." 392 U.S. 219, 225-6, 20 L. Ed. 2d 1047, 1053.

When we put aside, as we must, the defendant's testimony and judicial admission and put aside too the illegally gotten physical evidence and confession, it cannot be held, we judge, that the evidence that remains of the defendant's guilt, even only of burglary, is overwhelming and the error harmless as the State claims. *Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174, to which the State refers us, involved a markedly different situation. There three unchallenged confessions and strong corroborative evidence of the defendant's guilt

were available to support the conviction after the objectionable evidence had been put aside.

For the reasons given, the judgment of the appellate court is reversed as to the burglary and affirmed as to the murder and robbery convictions, and the cause is remanded to the circuit court for a new trial.

*Affirmed in part, reversed in part and remanded.*