THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANSELM HOLMAN, Defendant-Appellant.

First District (2nd Division)   No. 1—90—1466

Opinion filed July 27, 1993.

McCORMICK, P.J., dissenting.

Ralph Ruebner and Sonnenschein, Nath & Rosenthal, both of Chicago (Eric A. Oesterle and Donna L. Marks, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Randall Roberts, Sheila MacManus, and Howard D. Weisman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Anselm Holman (defendant) and Richie Cole were charged with murder, rape, residential burglary, robbery, home invasion, and aggravated kidnapping, and both were found guilty by a jury on all counts except for the charge of aggravated kidnapping. Defendant was sentenced to natural life for murder, extended terms of 60 years for rape and home invasion, and 30 years for residential burglary, all to be served concurrently. Cole was given concurrent terms of 40 years for murder, 30 years each for rape and home invasion, and 15 years for residential burglary. In the appeal of both defendants from their convictions, Cole claimed that the trial court had erroneously denied his motion to suppress his inculpatory statements. This court agreed and reversed and remanded Cole's case for a new trial, after holding that his statements were the fruits of an illegal arrest. (*People v. Cole* (1988), 168 Ill. App. 3d 172.) Although we affirmed defendant's conviction, we reduced his sentences for rape and home invasion to 30 years; he had not contested the trial court's denial of his motion to suppress. Defendant's petition for leave to appeal (*People v. Cole* (1988), 122 Ill. 2d 582), and his petition for a writ of *certiorari* (*Holman v. Illinois* (1989), 489 U.S. 1021, 103 L. Ed. 2d 203, 109 S. Ct. 1143), were both denied. The Illinois Supreme Court appointed present counsel, who later filed a verified post-conviction petition on his behalf. After the filing of memoranda of law and a hearing on the merits, the circuit court denied defendant's petition, holding that (1) he was not denied effective assistance of counsel, (2) the doctrine of waiver clearly applied to his failure to raise on appeal the issues of quashing his arrest, the suppression of his statements, and the unconstitutionality of the sentencing statute, both facially and as applied, and (3) the sentencing statute, both facially and as applied, is constitutional. On that same day defendant filed this appeal.

The facts of the underlying case reflect that on May 11, 1984, 75-year-old Mary Brackenridge was murdered in her home. After Detective Ralph Vucko was assigned to the case and had done some preliminary investigation of the case, he discovered that someone named

"Main" had been at the victim's home on the evening of her murder and that he might have some information regarding her death. On May 12, 1984, at approximately 2 p.m., Vucko located him and discovered that "Main" was a nickname for defendant. When Vucko suggested that defendant accompany him to the police station for questioning about Brackenridge's murder, defendant agreed to do so. Vucko further testified that en route to the police station in a squad car, defendant told Vucko and his partner, Detective Vic Switski, that another person was present with him at Brackenridge's home on the night of the murder, namely, Richie Cole. Defendant led them to Cole's home, and when they failed to find him there, defendant led the detectives to the home of Cole's girl friend, where he was eventually found.[1] Cole and defendant were then taken to the police station and placed in separate rooms. Defendant was not handcuffed and the door to his room was unlocked. At approximately 4 p.m., immediately after Cole had given the two detectives a statement in which he had implicated himself and defendant, defendant was "Mirandized" and interrogated. At the time of his interrogation, defendant was under arrest for murder, and although he was told that he was under arrest, he was not informed of the specific charge therefor. In the course of his interrogation, defendant denied having any knowledge of the murder, after which the two detectives left the station to look for the only witness to the crime, a seven-year-old boy named Rickey Brown.

At approximately 5:30 p.m., after their efforts to find Rickey proved to be unsuccessful, the detectives returned to the station, and, because they "felt he was lying," continued their interrogation of defendant. Defendant was again given his *Miranda* rights, and during this period of questioning he made several incriminating statements. At about 7 p.m., after Rickey had been located, a lineup was held, but he was unable to identify either Cole or defendant. At 10:30 p.m. defendant was "Mirandized" before being interrogated once more, and during this period of questioning, his statements were reduced to writing and signed by him. Defendant was also interrogated at three different times the following day.

---

[1]Although Detective Switski's account is substantially similar to Detective Vucko's, defendant's version differs. He contends that while still high from smoking marijuana the night before, he was taken from his home via a police squad car to Area 4 headquarters, where he was placed in a room and handcuffed to the wall. Fifteen minutes later, he had a "conversation" with Detectives Vucko and Switski, at which time he told them about Richie Cole; they then took him to find Cole.

Defendant testified at the hearing on his motion to suppress that during this time he was not fed or allowed to use the bathroom until he was placed in the lockup that night. He stated that he signed the incriminating statement only after the two detectives and an assistant State's Attorney, Scott Nelson, promised he would be released the next day if he signed some papers. According to the State's witnesses, however, defendant was not high on marijuana during any of the interrogations; he was not physically abused by anyone; and he was given sandwiches, water and access to toilet facilities. The State also refuted defendant's testimony that he was denied sleep in the interview room and that he was promised he would be released if he signed certain papers.

I

Defendant's principal issue is that he was denied effective assistance of appellate counsel because the attorney failed to challenge the denial of defendant's motion to suppress. Under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*), a defendant must show that "in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both." (Ill. Rev. Stat. 1989, ch. 38, par. 122—1; see also *People v. Caballero* (1989), 126 Ill. 2d 248, 259.) "A Post-Conviction Hearing Act proceeding is not an appeal *per se*, but a collateral attack on a judgment." (*Caballero*, 126 Ill. 2d at 258.) In *Evitts v. Lucey* (1985), 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 830-31, 105 S. Ct. 830, 836-37, the Supreme Court of the United States determined that a defendant is entitled to effective assistance of counsel in direct appeals of right. In *Caballero*, the Illinois Supreme Court determined that the two-part *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, standard, applied originally to challenges to the competence of trial counsel, is also applicable to challenges to the assistance of appellate counsel:

"[W]e believe that the same standard applies *a fortiori* to a claim that an appellate advocate chose the wrong issues or argued them ineffectively. Where the defendant maintains, for example, that his appellate attorney failed to argue a particular issue, he must show [1] the failure to raise that issue was objectively unreasonable, as well as [2] a reasonable probability that, but for this failure, his sentence or conviction would have been reversed." (Emphasis added.) *Caballero*, 126 Ill. 2d at 269-70.

Defendant contends that his appellate counsel did not meet these standards when he failed to appeal the denial of the motion to suppress. It is defendant's position that "[c]ounsel's failure to press these claims on appeal cannot be justified as sound appellate strategy." In support of his position, he cites the affidavit of Gordon Berry, counsel in his direct appeal, swearing to the following: that (1) he did not recall ever discussing the "Fourth Amendment/Motion to Quash Arrest issue" with defendant and that defendant never told him to raise it; (2) the reason for not raising this issue was "that a determination was made that it was not sufficiently meritorious for the appeal," although Kenneth Jones, an appellate defender who acted as "back up" on the case, thought Berry should "check out or consider the issue." Berry, however was unable to "recall at the moment what our initial estimate of the merits were [sic]. Suffice it to say that eventually, I decided not to raise it, but I cannot at the moment recall the exact rationale or process I followed in reaching that determination."

Defendant nonetheless concludes that counsel's appraisal of the merits was clearly wrong. Defendant also asserts that but for this failure, his conviction would have been reversed, for "[h]ad counsel argued the merits of the constitutional claims, [he] would have received a new trial and benefited by the suppression of illegal evidence. This is what happened to Richie Cole who had competent representation on appeal."

A

Defendant claims that his counsel on appeal was ineffective because he did not argue that the findings of fact made by the trial judge in the underlying case regarding his motion to suppress were clearly erroneous and contrary to the manifest weight of the evidence. Those determinations were as follows: (1) defendant's statements were voluntary; (2) they were not the product of any mental or physical coercion; (3) defendant twice signed a waiver of rights; (4) he waived his right to counsel; (5) there was no merit to his claim that he was told by police that if he signed some papers he could go home; (6) during his interrogation by the police he was not high from smoking marijuana the night before; (7) the two-day interrogation was not constant and he was allowed to sleep; (8) he did not complain to the assistant State's Attorneys that he had been beaten or coerced; in fact, his signed statements indicated the contrary; and (9) he was not tricked when he was told that it was a murder investigation.

As stated in *People v. McCleary* (1990), 208 Ill. App. 3d 466, 476:

"The test of whether a statement is admissible at trial is whether it has been made freely, voluntarily and without compulsion or inducement or whether the defendant's will was overcome at the time he confessed. [Citation.] Moreover, wrongful or coercive police conduct is a necessary precursor to finding that a confession is involuntary. [Citation.] The trial court need only be convinced by a preponderance [of the evidence] that the confession was voluntary. [Citation.]"

Thus, it is important to view all of the "circumstances surrounding the making of the statement." (*People v. Stachelek* (1986), 145 Ill. App. 3d 391, 401.) As stated in *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 132-33:

"The characteristics of the accused which must be examined are those which bear upon his ability to make knowledgeable and independent decisions. Pertinent factors are the defendant's age, intelligence, prior experience with the criminal law and emotional stability. *** While the prosecution bears a heavy burden of establishing that a statement was made knowingly, intelligently and voluntarily, where a trial court so finds after application of the proper legal standard, review is limited to whether that finding is contrary to the manifest weight of the evidence."

Defendant claims that his appellate counsel "should have been aware from the entire record before him *** that [defendant] was not a typical subject of police/custodial interrogation." Defendant was 17 years old; he had no juvenile record and no prison record, although he had been placed on three months' supervision for misdemeanor theft one month before this incident; and he had no charges pending against him. Defendant had dropped out of high school in the 10th grade, was employed as a part-time janitor, and lived with his mother. Moreover, defendant claims that "[a]ppellate counsel should have scrutinized the testimony of Detectives Switski and Vucko. The exploits of these two officers are well documented. See, *e.g., People v. Ealy* (1986), 146 Ill. App. 3d 557," suggesting that the two officers had previously exhibited a propensity for improper police conduct.

■ Applying the above-mentioned standards, we hold that the trial court's findings of voluntariness were not contrary to the manifest weight of the evidence, for "[w]e are not asked to decide whether we would have reached the same conclusion in the first instance." (*People v. Lekas* (1987), 155 Ill. App. 3d 391, 415.) Although defendant was a 17-year-old high school drop-out who had had no significant prior experience with the law, the prosecution nonetheless met its

burden of establishing that his statement was made knowingly, intelligently and voluntarily. Despite defendant's claim that his signed statement was the product of physical and psychological abuse, the trial judge found that he failed to contradict sufficiently the testimony of the State's witnesses that he had received adequate food, drink, and rest; that he was furnished bathroom accessibility; and that six short interrogations over a 25-hour span of time were not abusive. Moreover, it is important to note that it was within his province as trial judge to assess the credibility of the witnesses before him on the issue of voluntariness. (See *People v. Racanelli* (1985), 132 Ill. App. 3d 124.) Also important is a lack of corroborating facts that a beating had occurred—defendant failed to produce any evidence of physical or mental abuse to contradict the State's proof of voluntariness. For these reasons we hold that the trial court's findings that defendant's statement was made voluntarily were not against the manifest weight of the evidence.

B

Defendant also maintains that his counsel on appeal was ineffective because he failed to argue that the police lacked probable cause to arrest him. "The police may not seize or detain a suspect without probable cause." *People v. Downey* (1990), 198 Ill. App. 3d 704, 715, *appeal denied* (1990), 133 Ill. 2d 563.

Before we consider the issue of probable cause, however, it is necessary to determine when defendant was seized or detained within the meaning of the fourth amendment:

"A person has been seized when, in view of the surrounding circumstances, a reasonable person would have believed that he was not free to leave. [Citation.] The focus in that analysis is on the coercive effect of the police officers' conduct. [Citation.] The police officers' subjective belief that the defendant was free to leave is not determinative where it was not communicated to the defendant. [Citation.]" (*Downey*, 198 Ill. App. 3d at 714.)

Applying these tests to the facts of this case, it is clear that defendant was seized or detained as defined by the fourth amendment only *after* Cole had implicated him. As noted earlier, defendant agreed to accompany Vucko and his partner to the police station. When defendant and Cole arrived at the police station, the police placed defendant in an unlocked interview room; he was not handcuffed. After Cole had implicated defendant, however, the police locked the door to the inter-

view room and handcuffed him; it was at this time that he was seized or detained within the meaning of the fourth amendment.

■ We consider next the question of whether the police had probable cause to seize or detain defendant after he had been implicated by Cole. "Probable cause exists when the totality of the circumstances known to the arresting officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime" (*Downey*, 198 Ill. App. 3d at 715; see also *People v. Tisler* (1984), 103 Ill. 2d 226, 236). This determination is governed not by technical legal rules but by commonsense considerations which are factual and practical. (*Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310; *People v. Mitchell* (1970), 45 Ill. 2d 148, 153-54.) Moreover, the probability of criminal activity, and not proof beyond a reasonable doubt, is the standard for assessing probable cause. (*Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590; *People v. Exline* (1983), 98 Ill. 2d 150, 154.) "A trial court's finding of probable cause will not be disturbed on review unless it is against the manifest weight of the evidence." (*People v. Zunker* (1989), 184 Ill. App. 3d 816, 822.) "Our task on review is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed[ ] *Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332; *People v. Tisler* (1984), 103 Ill. 2d 226, 248 [ ]"; (*People v. Williams* (1991), 147 Ill. 2d 173, 209), in order to determine if the decision of the trial court was " 'palpably erroneous and wholly unwarranted' [citation] or 'appear[ed] to be arbitrary, unreasonable, and not based upon the evidence. [Citation.]' " *People v. Harris* (1991), 220 Ill. App. 3d 848, 860, *appeal denied* (1992), 143 Ill. 2d 643.

We hold that the trial court was well within its warrant in finding that the police had probable cause to arrest defendant. Viewing the totality of the circumstances known to Officers Switski and Vucko, a reasonably prudent person would have believed that defendant participated in the murder of Mary Brackenridge. First, from prior investigation, the police knew that defendant had been at the victim's home on the evening of her murder. Second, the police utilized Cole's reliable statement—an admission against penal interest (*People v. James* (1987), 118 Ill. 2d 214, 223)—which implicated both himself and defendant in the murder of Mary Brackenridge. Both of these factors combined to create sufficient probable cause to arrest defendant.

However, even if we were to assume that the police lacked probable cause to arrest defendant, the trial court nonetheless properly denied his motion to suppress his confession because the taint of the ille-

gal arrest was purged or attenuated. In considering attenuation, the factors to be taken into account are: "[1] the temporal proximity of the arrest and the confession, [2] the presence of intervening circumstances, and [3] the purposefulness and flagrancy of the official misconduct." (*Downey*, 198 Ill. App. 3d at 716.) Another factor to be considered is "the presence or absence of *Miranda* warnings." (*People v. Pierson* (1988), 166 Ill. App. 3d 558, 563, *appeal denied* (1988), 121 Ill. 2d 581.) "A trial judge's decision on a motion to suppress, including his or her finding under the attenuation doctrine, will not be overturned unless manifestly erroneous." *People v. Lekas* (1987), 155 Ill. App. 3d 391, 415, *appeal denied* (1987), 116 Ill. 2d 569, *cert. denied* (1988), 485 U.S. 942, 99 L. Ed. 2d 283, 108 S. Ct. 1123.

Defendant argues, however, that

> "the act of confronting an illegally seized person, while in continuous police custody, with a confession of an accomplice which implicates the two is not a constitutionally valid intervening circumstance to purge the detainee's confession from the taint of his unlawful arrest. *** In this case, *[defendant] was seized unlawfully, and while in custody he named Cole to the police,* who in turn seized Cole unlawfully, obtained a confession from Cole unlawfully, and then confronted Holman with that confession." (Emphasis added.)

It is defendant's further contention that "confronting an arrestee with an accomplice's confession is a further exploitation of the arrestee's illegal arrest." In support of this theory defendant relies on the dissenting opinion in the Pennsylvania Supreme Court case of *Commonwealth v. Wright* (1975), 460 Pa. 247, 332 A.2d 809, *on habeas proceedings, United States ex rel. Wright v. Cuyler* (3d Cir. 1977), 563 F.2d 627. The defendant in *Wright* had been arrested by the police after he was found to meet the description of someone who had participated in a shooting earlier in the evening; the defendant, however, had denied any involvement in the crime. Meanwhile, the defendant's co-felon had been apprehended and had made a statement implicating himself and Wright. Wright was then confronted with this statement and eventually made inculpatory admissions. At trial, Wright made a motion to suppress his statement as the fruit of an illegal arrest, but the motion was denied. On appeal the Pennsylvania Supreme Court upheld the trial court's ruling, noting that "[s]tatements following an illegal arrest must be excluded from evidence only if they are causally related to the invasion of the suspect's rights ***[, and t]he burden of showing the absence of a causal nexus is on the Commonwealth." (*Wright*, 460 Pa. at 250-51, 332 A.2d at 811.) The court went on to

hold that the Commonwealth had met its burden on this issue, in that it was Wright's confrontation with his co-felon's statement, "rather than any exploitation of the circumstances of the arrest, which prompted his confession." (*Wright*, 460 Pa. at 251, 332 A.2d at 811.) The dissent, however, argued that

> "[t]he logical and dangerous result of [the majority's] reasoning is to grant law enforcement officers an unfettered discretion to illegally seize any person or any number of persons on mere suspicion secure in the knowledge that if by chance a subsequent confession is obtained by means of a confrontation with a suspected co-defendant, the illegally seized individual will not have the right to suppress the tainted confession.
>
> The conclusion the majority reaches ignores the purpose of the exclusionary constitutional rules by allowing subsequent discoveries from an illegal seizure to validate an arrest that was made without probable cause." (*Wright*, 460 Pa. at 252, 332 A.2d at 812 (Manderino, J., dissenting).)

(See also *State v. Winegar* (1985), 147 Ariz. 440, 711 P.2d 579 (which adopts the reasoning of this dissent as its holding).) Defendant contends that this court should adopt the reasoning of the dissent of Judge Manderino in *Wright*.

Defendant fails to note, however, that over a dozen years ago the Illinois Supreme Court adopted the majority opinion of *Wright*; in fact, neither party has so much as mentioned, either in the briefs or in oral argument, the case of *People v. Gabbard* (1979), 78 Ill. 2d 88. In *Gabbard* the defendant was arrested, allegedly without probable cause, for the burglary and armed robbery of a Springfield couple. During one of his numerous interrogations, the defendant was shown "a composite sketch which had been prepared by the sheriff's police a few days after the robbery from descriptions, supplied to the police by each of the victims." (*Gabbard*, 78 Ill. 2d at 97.) One of the detectives inquired whether the defendant thought the sketch resembled him, and the defendant replied that there were many similar characteristics between him and the sketch, but at this time the defendant made no inculpatory statements. (*Gabbard*, 78 Ill. 2d at 97.) Later, the defendant was identified in a lineup by the two victims. After he was told of the results of the lineup, he gave a "very circumstantial account which *** corresponded closely with the reports previously given to the police by the victims." *Gabbard*, 78 Ill. 2d at 98.

At trial the defendant filed a pretrial motion to suppress his inculpatory statements, but the motion was denied and the denial was later upheld on appeal. The supreme court addressed the question of

whether the defendant's confrontation with the sketch could be considered an intervening event, and cited favorably the analysis in *Commonwealth v. Wright* (1975), 460 Pa. 247, 332 A.2d 809, that "the confession was nonetheless admissible, since it was not causally related to the invasion of the defendant's rights." (*Gabbard*, 78 Ill. 2d at 100.) *Gabbard*, and its reliance on *Wright*, was subsequently reaffirmed in *People v. White* (1987), 117 Ill. 2d 194, *cert. denied* (1988), 485 U.S. 1006, 99 L. Ed. 2d 698, 108 S. Ct. 1469, in which the court stated, " '[a] defendant's confrontation with untainted evidence, which induces in the defendant a voluntary desire to confess, may be a legitimate intervening circumstance' to dissipate the taint of the defendant's earlier illegal arrest." *People v. Thomas* (1989), 186 Ill. App. 3d 782, 794, quoting *White*, 117 Ill. 2d at 224.

"Illinois Appellate Court decisions have also held that a defendant's confrontation with untainted evidence is an intervening circumstance sufficient to purge the taint of an illegal arrest." (*Thomas*, 186 Ill. App. 3d at 794.) Two of these cases are cited by defendant: *People v. Lekas* (1987), 155 Ill. App. 3d 391, and *People v. Pierson* (1988), 166 Ill. App. 3d 558. In *Lekas*, defendant Philip Lekas was arrested without probable cause, but the court admitted his confession because it had been purged of any taint when Philip was confronted with new, intervening information after the police had obtained an independent identification by a motel desk clerk who identified Philip "as having recently been there with [his brother] George." (*Lekas*, 155 Ill. App. 3d at 414.) In *Pierson*, the police had arrested the defendant without probable cause, but while he was still in custody, they obtained from a witness who was not a codefendant, independent testimony which supplied probable cause. *Pierson*, 166 Ill. App. 3d at 561.

Defendant attempts to distinguish these cases on the sole ground that the intervening probable cause in each came as a result of

> "independent police investigation while the defendant was in custody. *** In this case, *[defendant] was seized unlawfully, and while in custody he named Cole to the police*, who in turn seized Cole unlawfully, obtained a confession from Cole unlawfully, and then confronted [defendant] with that confession. No lawful independent police work is present here, [however]."
> (Emphasis added.)

Defendant posits that his confrontation with Cole's confession implicating him in Mary Brackendridge's murder cannot be an intervening circumstance because Cole's confession is tainted evidence—tainted because the police learned of Cole *after defendant had been illegally seized or detained by the police*; that but for defendant's leading the

police to Cole, the police would not have been able to question Cole and thus obtain a tainted confession with which to confront defendant.

These arguments are clearly untenable. As previously noted, the facts clearly reflect that defendant had been neither seized nor detained when he supplied Cole's name to the police while riding in the squad car. At this time, no indicia of arrest were present: he accompanied the police voluntarily, he was not handcuffed while in the squad car, and he was free to leave whenever he desired. We fail to discern anywhere in the record of this case that defendant's statements were causally related to any invasion of his rights; it was his confrontation with Cole's statement rather than any exploitation of the circumstances of the arrest which we assume, *arguendo*, to have been illegal, which prompted his confession. *Wright*, 460 Pa. at 250-51, 332 A.2d at 811; *Gabbard*, 78 Ill. 2d at 100.

The facts of this case are unlike those in *People v. Winsett* (1991), 222 Ill. App. 3d 58, 71 (Reinhard, J., dissenting), *appeal allowed* (1992), 144 Ill. 2d 642. There, when the defendant was arrested, he invoked his *Miranda* right to counsel; nevertheless, the police interrogated him, obtaining the name of Glenn Spruille. When the defendant filed a motion to suppress evidence of his statements, the court granted it. He later filed a motion *in limine* to exclude " 'any and all testimony of *** SPRUILLE as it relat[ed] to [him], for the reason that said testimony and said evidence was a direct result of statements elicited from [him], and said statements have heretofore been ruled inadmissible by this Court,' " arguing that the evidence was the " 'fruit of the poisonous tree and that the police and State should not benefit from any illegal activities on their part,' " but the court denied the motion. (*Winsett*, 222 Ill. App. 3d at 61.) At trial Spruille testified that the defendant had paid him to kill someone, and the jury ultimately found the defendant guilty of attempt (murder), solicitation, and conspiracy.

On appeal the court held that the interrogation of the defendant by the police was a violation of his fifth amendment constitutional right. "Therefore, Spruille's testimony, as the 'fruit' of the actual violation of [the] defendant's fifth amendment privilege, should have been suppressed." (*Winsett*, 222 Ill. App. 3d at 67.) However, no such problems exist in the case at bar. At the time defendant gave Cole's name to the police, he had not, as we have seen, been seized or detained by the police; therefore, Cole's name was not obtained in violation of any of his constitutional rights. Consequently, Cole's subse-

quent statements to the police cannot be considered in any way as fruit of the poisonous tree.

Accordingly, since we find the distinction drawn by defendant and the dissent to be groundless, we hold that Cole's confession constitutes a sufficiently valid intervening event or circumstance to attenuate the taint, if any, of defendant's allegedly illegal arrest. Therefore, since the outcome of this case would not have been different had defense counsel appealed the trial court's failure to quash defendant's arrest, we hold that he was not denied the effective assistance of counsel on appeal.

## II

Defendant also alleges that the trial court's sentencing him to natural life because of the presence of brutal and heinous behavior indicative of wanton cruelty must be vacated because the sentencing statute (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(b)) is unconstitutional both on its face and as applied. Addressing first the facial attack, the State argues that defendant's argument has been waived on appeal. As stated in *People v. Stewart* (1988), 123 Ill. 2d 368, 372, *cert. denied* (1989), 489 U.S. 1072, 103 L. Ed. 2d 824, 109 S. Ct. 1356:

> "The scope of post-conviction review is limited by the doctrines of *res judicata* and waiver. In essence, post-conviction proceedings are limited to issues which have not been, and could not have been, previously adjudicated. Put another way, all issues actually decided on direct appeal are *res judicata*, and all those which could have been presented but were not are deemed waived."

The State contends that defendant could have easily presented his facial attack on appeal, and since he neither filed a post-sentencing motion nor argued the constitutionality issue on appeal, these arguments are now waived.

█ Defendant responds, however, that a claim of unconstitutionality may be raised for the first time at a post-conviction proceeding and that the doctrine of waiver does not apply. In support of this contention, he cites *People v. Sarelli* (1973), 55 Ill. 2d 169. Although not cited by defendant, *People v. Bryant* (1989), 128 Ill. 2d 448, 454, also stands for the proposition that "a constitutional challenge to a statute can be raised at any time." Moreover, in light of the fact that defendant is arguing ineffective assistance of appellate counsel, it would not be meet for this court to penalize defendant by applying the doctrine

of waiver to this issue. See *People v. Ruiz* (1989), 132 Ill. 2d 1, 9-10, *cert. denied* (1990), 496 U.S. 931, 110 L. Ed. 2d 652, 110 S. Ct. 2632.

As to the merits of his argument, defendant posits that the subject sentencing statute is facially vague, "respectfully disagree[ing]" with *People v. La Pointe* (1981), 88 Ill. 2d 482, and *United States ex rel. Peeples v. Greer* (7th Cir. 1984), 739 F.2d 262. He asserts that since the "statutory basis for the imposition of a natural life term is unconstitutionally vague and ill defined[, t]he imposition of a natural life term is therefore standardless," resulting in a lack of "principled means to distinguish those who receive this penalty from those who do not." We disagree. Holding that section 5—8—1(a)(1) is not unconstitutionally vague, the *La Pointe* court found that the word "heinous" has been defined as "hatefully or shockingly evil" or "grossly bad," and that the term "brutal" includes conduct which is "devoid of mercy or compassion," or "cruel or cold-blooded." (*La Pointe*, 88 Ill. 2d at 499-500.) Moreover, in *People v. Barnhill* (1989), 188 Ill. App. 3d 299, 309, *appeal denied* (1990), 129 Ill. 2d 566, the court, in interpreting section 5—8—1(a)(1)(b), found that "these words are sufficiently indicative of the type of murder which warrants a sentence of natural life imprisonment and are not unconstitutionally vague on their face," and that the statute in *Maynard v. Cartwright* (1988), 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853, discussed in *Barnhill*, is sufficiently different and distinguishable. Defendant argues that *Barnhill* is not binding on this court and is "plainly wrong," failing to recognize that the supreme court denied the defendant's appeal in that case, which hardly indicates disagreement with the holding of the court.

■ The State also asserts that defendant's as-applied attack is *res judicata* in that he is "veiling the propriety of his sentence· in the all-encompassing notion that the statute was 'unconstitutionally' applied to his case." Defendant contends, however, that this issue is not *res judicata* because the trial court considered merely an "excessive sentence" argument and not an "unconstitutionally applied" argument. We disagree with defendant's position, for his argument appears to be nothing more than an attempt to argue the merits of his natural life sentence—that the trial judge abused his discretion in imposing it. On appeal this court determined that the trial court was "incontestably justified" in imposing a natural life sentence because "Holman was more responsible for the murder, and certainly his leadership role throughout his criminal endeavor with Cole was sufficient evidence upon which to reach that conclusion." (*Cole*, 168 Ill. App. 3d

at 185.) For these reasons, we hold that defendant's as-applied attack is *res judicata.*

Even if we were to agree with defendant as to the nature of his charge, we would nonetheless find defendant's argument to be without merit. Defendant claims that the trial judge did not apply a narrow construction of the statute when he applied it to defendant, claiming that he relied on the fact that the victim was "actually killed by the defendant Holman [when he placed] his hand over her mouth to stop her from yelling out, calling for help." Defendant omits from the judge's remarks, however, that he also based his decision on the fact that the victim was a 75-year-old woman who was attacked in her own home in the middle of the night. Nevertheless, defendant cites *People v. Harrison* (1990), 196 Ill. App. 3d 298, *appeal denied* (1990), 133 Ill. 2d 565, as an instance in which the court vacated a natural life sentence where the defendant held a pillow over the mouth of the 87-year-old victim to quiet her during a home invasion. In *Harrison,* however, the defendant's acts did not cause the death of the victim; it was codefendant's beating the 87-year-old victim that caused her death. Defendant also cites *People v. Bivens* (1987), 163 Ill. App. 3d 472, *appeal denied* (1988), 119 Ill. 2d 561, for the proposition that the judge lacked authority to impose a natural life sentence since the record did not clearly indicate that the jury found the defendant alone was responsible for the murder. In *Bivens,* the defendant and codefendant were tried together for murder, and in instructing the jury, the judge gave both a murder and an accountability instruction, such that when the jury returned a verdict of guilty against both defendants, the court was unable to determine whether the defendant was found guilty for having committed the murder or under an accountability theory. Such is not the case at bar. Although defendant claims that in their closing arguments both defendants argued that the other one caused the victim's death, the jury was given separate instructions for Cole and defendant, and the jury determined that defendant murdered the victim. Thus *Bivens* is inapposite here. Accordingly, we find that defendant's as-applied attack is *res judicata,* and even if it were not, we find that his attack is groundless.

### III

Defendant suggests that his natural life sentence violates constitutional guarantees of due process and equal protection in that there is no rational basis for differentiating between imposition of an extended-term or natural life sentence for a murder conviction based on the finding that the offense was accompanied by exceptionally brutal

or heinous behavior indicative of wanton cruelty. Defendant contends that sections 5—8—2(a)(1) and 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—8—2(a)(1), 1005—5—3.2(b)(2))[2] contain language identical to the language in section 5—8—1(a)(1)(b) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(b)[3] (see *People v. Andrews* (1989), 132 Ill. 2d 451), and therefore the sentencer is afforded an unbridled choice of sentences to impose, necessarily resulting in the arbitrary imposition of natural life sentences.

■ The State urges that this argument is waived on appeal, but for the same reasons as discussed above with respect to the waiver of the sentencing statute's facial vagueness challenge, we hold that this issue is not waived. The defendant in *People v. Cartalino* (1982), 111 Ill. App. 3d 578, made the same argument that defendant advances here, but the court rejected it, holding:

> "Section 5—8—1(a)(1) of the Code [citation] does not permit the court to impose a sentence of natural life solely on the basis of the seriousness of the offense committed [citation] without

---

[2]Section 5—5—3.2(b)(2) provides as follows:

"(b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender [who was at least 17 years old on the date the crime was committed]:

\*\*\*

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).

Section 5—8—2(a)(1) provides as follows:

"(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:

(1) for first degree murder, a term shall be not less than 60 years and not more than 100 years." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(1)."

[3]Section 5—8—1(a)(1)(b) provides as follows:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for first degree murder, \*\*\* (b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(b).

regard to a defendant's rehabilitative potential. [Citation.] In determining a proper sentence for any felony, including murder, factors in aggravation and mitigation must be considered ***." (*Cartalino*, 111 Ill. App. 3d at 591.)

In *People v. Abernathy* (1989), 189 Ill. App. 3d 292, 318, *appeal denied* (1990), 129 Ill. 2d 565, the court affirmed the reasoning in *Cartalino*, finding that "the factors in mitigation and aggravation provide the necessary guidance for the trial court to decide whether a particular defendant should be sentenced to life imprisonment or to an extended term." Defendant does not attempt to distinguish these cases; accordingly, we find no merit in defendant's argument on this issue.

For the above-stated reasons, we affirm the decision of the trial court in denying defendant's post-conviction petition.

Affirmed.

HARTMAN, J., concurs.

JUSTICE McCORMICK, dissenting:

It was the best of times. Our legal system functioned in all of its magnificent splendor with the utmost care and respect for constitutional dignity. Police officers respectfully requested that defendant, a civic-minded public-spirited citizen, voluntarily accompany them to the police station as part of their investigation of a murder. Defendant complied. He was treated humanely by the police. They gave him food, water and access to a bathroom during his 25-hour stay at the police station. Eventually the police had probable cause to arrest defendant, and they advised him of his *Miranda* rights. Defendant made incriminating statements.

It was the worst of times. Our legal system utterly failed to protect basic human rights. Without legal justification, police officers took a 17-year-old citizen (defendant) from his home and transported him against his will to a police station. Isolated from relatives, defendant was handcuffed and beaten by the police. Defendant was denied food, water and access to toilet facilities. He was not given *Miranda* warnings or an attorney to advise and counsel him. He was not allowed to see his family who came to the police station for that purpose.

Unlike the tale of two cities, these two tales cannot both be true. The trial court denied defendant's motion to suppress and made findings of ultimate facts (mixed questions of fact and law) that totally ab-

solved the State of any impropriety or denial of defendant's constitutional rights.

The trial court found that defendant signed waivers, was not high on marijuana, was not subjected to mental or physical coercion, was not interrogated constantly over two days, was allowed to sleep and did not complain to the assistant State's Attorney. These are basic and inferred facts and subject to a very narrow standard of review. These findings cannot be disturbed unless they are clearly erroneous. *People v. Saunders* (1991), 220 Ill. App. 3d 647, 668, 580 N.E.2d 1246.

The trial court further found that defendant waived his right to counsel and made voluntary statements. These findings of ultimate facts are subject to a broader standard of review. These findings can be disturbed only where there is a legal error in the choice, interpretation or application of a legal precept. The scope of our ongoing question of law is independent, not deferential. (*People v. Williams* (1984), 124 Ill. App. 3d 734, 736, 464 N.E.2d 1176.) On the basis of these findings, the trial court denied defendant's motion to suppress.

Appellate counsel for defendant failed to raise the question of the denial of the motion to suppress in defendant's appeal. In a subsequent post-conviction petition and hearing, defendant urged that the failure of appellate counsel to raise the issue of denial of his motion to suppress denied him effective assistance of appellate counsel. The ruling of the post-conviction court here is an interpretation of a question of law, and as such, it is subject to a broad standard of review on appeal. *Williams*, 124 Ill. App. 3d at 736.

I respectfully disagree with the majority's opinion on the issue of ineffectiveness of counsel and probable cause to arrest defendant. As the majority points out, to succeed in his claim of ineffective assistance of appellate counsel, defendant must show both that the failure to appeal the adverse ruling on the motion to suppress was objectively unreasonable and that there is a reasonable likelihood that his conviction would have been reversed had that issue been presented to the appellate court. (*Caballero*, 126 Ill. 2d at 269-70.) The majority opinion concludes that it is not reasonably likely that defendant's conviction would have been reversed if appellate counsel had challenged the ruling on the motion to suppress, because the trial court's ruling on that motion was correct.

Appellate counsel has no obligation to brief every conceivable issue on appeal. "[I]t is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong." (*People v. Ferro*

(1990), 195 Ill. App. 3d 282, 288, 551 N.E.2d 1378.) The appellate court has found appellate counsel's assistance ineffective where he failed to raise defendant's strongest issue on appeal. *Downey*, 198 Ill. App. 3d at 716.

Defendant argues that he did not receive effective assistance because defense counsel raised three minor issues and failed to raise the issue of the motion to suppress, which is of great magnitude.

This court affirmed defendant's conviction and stated that: (1) the issue of the proposed question to the venire regarding presumption of innocence was without merit (*Cole*, 168 Ill. App. 3d at 183); (2) the denial of a continuance was not an abuse of discretion where the motion was made after jury selection and defendant could not offer any assurance that a particular witness would be available and offer relevant testimony (*Cole*, 168 Ill. App. 3d at 184); and (3) the testimony regarding the accuracy of written summaries was of no consequence in that defendant never denied the statements but contended that they were coerced (*Cole*, 168 Ill. App. 3d at 184). Counsel successfully challenged the extended-term sentences the trial court imposed for rape and home invasion. That success will have no effect on the time defendant actually serves because this court affirmed defendant's sentence of natural life in prison for murder. *Cole*, 168 Ill. App. 3d at 185.

The trial court denied the motion to suppress stating that defendant was not arrested until Cole made statements implicating him. The majority opinion in the present appeal concludes that the trial court's decision on the motion to suppress is correct and that the taint of the illegal arrest, if any, was purged or attenuated.

In the post-conviction hearing, appellate counsel could not explain why he believed that a challenge to the ruling on the motion to suppress was not sufficiently meritorious for appeal. Our task is to determine whether appellate counsel's failure to challenge the ruling on the motion to suppress was objectively unreasonable, and if it was unreasonable, whether the failure prejudiced defendant. (See *Caballero*, 126 Ill. 2d at 269-70.) This court in the first appeal recognized that defendant's appellate counsel had failed to raise an important issue with its surprised observation: "Although Holman might also have a colorable fourth amendment argument, he has not chosen to raise it before this court." (*Cole*, 168 Ill. App. 3d at 178.) This extraordinary uninvited remark demonstrates our bewilderment at the failure of appellate counsel to litigate the denial of the motion to suppress. Appellate counsel chose to raise three weak issues on appeal, and failed to raise defendant's strongest argument for reversal of the convictions.

Appellate counsel's appraisal of the merits of the issues was patently wrong. The failure to challenge the rulings on the motion to suppress is objectively unreasonable. See *Ferro*, 195 Ill. App. 3d at 293.

The majority finds that this court would have affirmed Holman's conviction even if appellate counsel had challenged the trial court's decision on the motion to suppress.

This view is cursed by the need to distinguish this case from the case against codefendant Cole. We held that the trial court should have granted Cole's motion to suppress. A review of the similar facts and circumstances between defendant and Cole is enlightening: The State contends that defendant and Cole agreed to accompany the police, on a voluntary basis, to the police station; both were contacted and transported to the police station by the same police officers; both were transported, at some juncture, to the police station by the police in the same vehicle at the same time; both were told by the police officers not to speak to each other while being transported; upon arrival at the police station, they were placed in separate interview rooms, the doors to which were closed; both defendants were interrogated by the same police officers; the officers never told either defendant that he was free to leave; relatives of both defendant and Cole came to the police station; neither of them met with or consulted with their relatives while at the police station; and both testified that they were beaten by the police and that their statements were coerced.

The differences between defendant and codefendant Cole are equally compelling and should be noted: At the time of the interrogation, defendant was 17 years old and codefendant Cole was 16 years old; in the initial appeal to this court, codefendant Cole challenged the trial court's ruling of the motion to suppress, and defendant did not; defendant's conviction was affirmed and codefendant Cole's conviction was reversed (in that Cole's statements were held to be the fruits of an illegal arrest).

The State concedes that police lacked probable cause to arrest defendant at the time of their initial contact with him. The State relies on its argument that the police did not arrest defendant until Cole implicated him, and that Cole's statement provided probable cause. Before police developed this probable cause, they went to defendant's home and suggested that he come to the police station because the station was "more conducive" to questioning. Police never told defendant, who was then 17 years old, that he was free to go. On the contrary, Officer Switski admitted that if defendant had asked to leave he would "definitely" have "tried to talk him out of it." Defend-

ant remained at the station for 25 hours before he made the incriminating statements the State introduced into evidence.

The core question that we must resolve is, what legal conclusion flows from the factual representation made by the police? (See *Williams*, 124 Ill. App. 3d at 736.) The history of this court is replete with pronouncements that give us guidance in making these determinations. I cannot better state that which has already been said. In deference to the eloquence of these pronouncements, I humbly quote them:

> "In reviewing this case, we bear in mind that in a criminal case the police are considered part of the prosecution team. Thus, when there is a motion to suppress because of alleged police coercion or racial intimidation, the trial judge must maintain a conscious awareness that the testimony of police is not to be viewed in isolation as if they have no interest in the outcome of the case. Rather, the testimony must be examined by the trial judge with the same scrupulous eye that one would expect the trial judge to use to assay the testimony of a party to the lawsuit.
>
> Also, the trial judge must keep in mind that ours is an adversary criminal justice system, and there must not be any naivete that it is otherwise. The stark realities of our adversary criminal justice system are such that what occurs within the confines of a police station during custodial interrogation when there is no attorney present is not always what the unsophisticated would expect. ***
>
> * * *
>
> *** [T]rial judges must be most circumspect when it appears that a right guaranteed to every citizen by our constitution may have been violated by police brutality or racial discrimination, for those affected are invariably the poorest, the weakest and the least educated, who are not sophisticated enough or do not have the resources to see and ensure that they are not denied the protections afforded by the rights and guarantees of our constitution." *People v. Banks* (1989), 192 Ill. App. 3d 986, 991-93, 549 N.E.2d 766.

The appellate court has further explicated the coercion inherent in police interrogations:

> "Whenever the police choose to conduct 'non-custodial interrogations' at the police station, there is a substantial risk that a court subsequently will disagree that the circumstances were noncustodial. [Citations.] This risk arises because police stations

are typically the location of custodial interrogations, thereby giving credibility to a suspect's claim that he believed himself to be in custody despite police testimony about how they treated the suspect. The interrogating officers ought to know that if the suspect makes incriminating statements and is later arrested, a motion to suppress those statements assuredly will be filed, and the defendant, as in the present case, is almost certain to testify that he believed he was in custody at the time he made those statements. \*\*\* By choosing the police station as the location for their allegedly 'non-custodial interrogations,' police officers give defendants, who later claim they believed they were in custody, the greatest possible advantage to support that claim. As in this case, the setting of the interrogation will be subject to very close scrutiny to see what support it lends to defendant's claim of custody. \*\*\*

Perhaps the best means of demonstrating the risk of finding coercion whenever a suspect is interrogated at a police station is to ask whether the same arguments made by the suspect ('I was taken to a small room, the door was closed, I was told to wait, other armed officers were present, *et cetera*') would sound nearly as credible or persuasive if the interrogation had occurred instead at the local Burger King restaurant, a nearby park, the suspect's own residence, or in any location of the *suspect's* choosing. We think not, and the case law in point supports that conclusion." (Emphasis in original.) *People v. Gorman* (1991), 207 Ill. App. 3d 461, 470-71, 565 N.E.2d 1349.

Cumulatively, the facts and circumstances of this case cry out for a finding that defendant was under arrest before Cole gave the statements incriminating him. In view of defendant's age, his prior lack of experience with the police, the fact that he and codefendant were told not to speak to each other while being transported to the police station, the fact that they were separated and isolated at the police station, the fact that the police never told defendant that he was free to leave, and relatives who were at the station did not meet with him, demonstrate that defendant was under arrest. There is no plausible explanation to the contrary. Why would defendant and codefendant be instructed not to talk to each other while being transported to the police station? Why separate them? Are cooperating, public-spirited citizens treated this way? By what authority do police officers order cooperating, public-spirited citizens not to speak to each other? By what authority do police officers remove a minor from his home without parental consent? By what authority did the police officers isolate

defendant and Cole from each other and their relatives? The authority is the right and the power to arrest. If defendant is under arrest, police officers are not required to obtain parental consent to transport him to the police station. While in the custody of the police after an arrest, defendant is subject to police regulation as to his contact with others. See generally *People v. Prim* (1972), 53 Ill. 2d 62, 69, 289 N.E.2d 601.

A reasonable, innocent person in defendant's position would not have considered himself free to leave. I would find that the trial court's finding that defendant was not arrested until Cole implicated him was manifestly erroneous and that the police arrested defendant without probable cause. See *People v. Townes* (1982), 91 Ill. 2d 32, 37-38, 435 N.E.2d 103; *Ealy*, 146 Ill. App. 3d at 564-66.

The majority finds that defendant's confession was admissible even if the arrest were illegal because the confession was sufficiently attenuated from the arrest. Here, too, I disagree. The majority opinion finds that police obtained Cole's name from defendant prior to defendant's arrest, and Cole's statements to the police then produced defendant's confession. The majority opinion concludes that Cole's statements constitute an intervening circumstance which attenuated the taint of the illegal arrest. There is conflicting testimony as to whether defendant gave the police Cole's name while en route to the police station or while at the police station.

For the reasons stated heretofore, the facts of this case demonstrate that defendant was under arrest at the police station prior to Cole's statements. Defendant did not give police Cole's name before this arrest. Cole's name and any evidence police obtained therefrom are fruits of the unconstitutional arrest of defendant.

Moreover, even if defendant gave police Cole's name before he arrived at the station, as the police testified, the police car provided a setting effectively as coercive as a police station for questioning this 17 year old. Police did not tell defendant he had the right not to go to the police station, and Officer Switski admitted he would have tried to talk defendant out of leaving. All the reasons cited by the court in *Gorman* for finding interrogations at police stations custodial apply with equal force to interrogations in police cars. Competent defense counsel could have argued that defendant was under arrest when police put him in the police car to take him to the station. If he was under arrest at that point, police obtained Cole's name from defendant as a consequence of this unconstitutional arrest. Cole's statements cannot provide attenuation between the unconstitutional arrest and defendant's confession be-

cause under either account, Cole's name and Cole's statements are at least arguably the product of the unconstitutional arrest.

For an intervening circumstance to supply attenuation between an illegal arrest and a confession, the intervening circumstance must be free from the taint of the illegal arrest. *White*, 117 Ill. 2d at 224; *Gabbard*, 78 Ill. 2d at 100; *Thomas*, 186 Ill. App. 3d at 794.

> "If an accused establishes the 'primary illegality' and shows a connection between the illegality and what are alleged to be fruits of the illegality, the prosecution will have the burden of establishing by clear and convincing evidence that the challenged evidence has come from an independent source." *People v. Wilson* (1975), 60 Ill. 2d 235, 238, 326 N.E.2d 378.

Officer Vucko testified that he first learned of Cole's involvement from defendant. The officers admitted that they did not find out about Cole from another source independent of defendant's statement. Defendant established the illegality of his arrest, and he has shown that he gave police Cole's name, which led police to question Cole and obtain statements implicating defendant, and police confrontation of defendant with Cole's statements led to defendant's confession. Defendant has shown a connection between the illegal arrest and the confession; the State has not shown that Cole's statements and defendant's confession came from an independent source. Under *Wilson, Gabbard* and *White*, since Cole's statements are not free from the taint of defendant's illegal arrest, those statements cannot be an intervening circumstance attenuating the connection between the illegal arrest and defendant's confession.

In *People v. Althide* (1979), 71 Ill. App. 3d 963, 389 N.E.2d 240, police improperly induced the defendant to make statements in which defendant gave the police the names of four persons whom the State later called as witnesses against the defendant. The appellate court reversed defendant's conviction and remanded the case for a determination of whether the police obtained the testimony of those witnesses from a source independent of defendant's statement. The court held that if police obtained the names of the witnesses only from defendant's statement, the evidence obtained from those witnesses was fruit of the poisonous tree of the improperly induced statements. Similarly, Cole's statements here are fruit of the poisonous tree of defendant's arrest, unless the State can show a source independent of that arrest for Cole's statements. The record does not reflect any evidence of such an independent source.

As Cole's statements are fruit of the poisonous tree, all evidence obtained by use of those statements, including defendant's confession,

remains fruit of the poisonous tree. In *People v. Williams* (1990), 138 Ill. 2d 377, 563 N.E.2d 385, police took the defendant to the police station for questioning, and he said he had been with Davis and Erving when the victim was murdered. Erving implicated Davis and Davis implicated defendant. Police then confronted the defendant with Davis' statement and defendant confessed. Our supreme court held:

"As one basis for finding that defendant's confession was attenuated from the taint of his unlawful arrest, the State contends that, even though Erving's name first came to police attention because of statements by defendant, and even though Davis was implicated by both Erving and defendant, the police would eventually have discovered Erving and Davis independently in any investigation of defendant, since they were known associates of his. The State cites *United States v. Ceccolini* (1978), 435 U.S. 268, 55 L. Ed. 2d 268, 98 S. Ct. 1054 ***. ***

The flaw in the State's *Ceccolini* analysis is that *Ceccolini* dealt with jurisprudential policy reasons for permitting live testimony at trial by a willing witness, not with whether the witness' supposed willingness or the inevitability of the witness' discovery can constitute an intervening circumstance as far as admissibility of the defendant's own confession is concerned. *Ceccolini* drew specific attention to this distinction. (*Ceccolini*, 435 U.S. at 277-79, 55 L. Ed. 2d at 277-78, 98 S. Ct. at 1061.) *** *Ceccolini* is inadequate to support an attenuation argument as to defendant's confession itself." *Williams*, 138 Ill. 2d at 397-98.

On defendant's account of when he gave police Cole's name, Cole's confession cannot be an attenuating circumstance because it is a product of defendant's illegal arrest. Even on the police account, defense counsel could present strong argument that defendant was under arrest before he gave them Cole's name. In light of the conflict in the evidence which the trial court left unresolved, I would find that there is a reasonable probability that defendant could have obtained a reversal of his convictions if appellate counsel on direct appeal had challenged the ruling on the motion to suppress because the trial court erred in finding that defendant was not arrested until Cole made his statement.

It was the worst of times.

I would reverse the decision denying defendant's petition for post-conviction relief. Defendant's conviction should be reversed and the case remanded for a new trial.